| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>Panel II | | |
| WILFREDO G. SANTOS VÁZQUEZ<br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE<br>CORRECCIÓN Y REHABILITACIÓN<br>Recurrido | KLRA202400241 | *Revisión Judicial* procedente del Departamento de Corrección y Rehabilitación<br><br>Núm. 215-24-015 |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de julio de 2024.

Comparece el señor Wilfredo G. Santos Vázquez (señor Santos Vázquez o recurrente), por derecho propio, confinado, mediante recurso de revisión judicial, solicitando la revocación de una *Resolución* del Departamento de Corrección y Rehabilitación (DCR) emitida el 4 de abril de 2024.[1] Mediante la referida determinación, se encontró incurso de haber infringido los Códigos 135 y 217, (desobedecer una orden directa e interferir el registro, respectivamente), del *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional,* (Reglamento Núm. 9221). En consecuencia, se le impuso como sanción la suspensión del privilegio de comisaría (excepto artículos de higiene personal), recreación activa, visitas, actividades especiales y cualquier otro privilegio que se le concede en la institución, por el periodo de cincuenta días calendarios.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

---

[1] Notificada el 15 de abril de 2024.

## I. Resumen del tracto procesal

Surge del expediente ante nuestra consideración que, el 5 de febrero de 2024,[2] el oficial Emalier Román Casiano (oficial Román Casiano o el querellante), presentó un *Informe de Querella de Incidente Disciplinarios* (*Querella*) en contra del recurrente, por hechos presuntamente ocurridos el 4 de febrero de 2024, a las 2:40pm, en la Sección 2, Módulo G, de la Institución Bayamón 501 (Institución)[3]. En la *Querella,* bajo el inciso que versa sobre la *descripción específica del acto prohibido,* el oficial Román Casiano narró que: *[m]ediante el proceso de un registro rutinario en la sección 2 módulo G estando a cargo el Sargento Ramos, el confinado Wilfredo Santos Vázquez de la celda 106, comienza hacer alegaciones sobre el registro. Se le ordena al mismo que permanezca callado y este se rehúsa a seguir las instrucciones impartidas. Acto seguido comienza a levantar el tono de voz interrumpiendo el registro. Se le ordena que se levante en 3 ocasiones el cual se rehúsa.[4]* La *Querella* le fue entregada al recurrente el 6 de febrero de 2024, y el mismo día también se le entregó un documento titulado, *Derechos que le asisten al confinado cuando se le radica un informe disciplinario.[5]*

Lo anterior inició una investigación sobre los hechos alegados en contra del recurrente, que comenzó el 7 de febrero de 2024, estando a cargo del señor Ricardo J. Casiano, Oficial de Querellas, quien completó el *Informe de Querella de Incidente Disciplinario, Parte-II, Investigación* (el *Informe*). En el *Informe* fueron recopilados varios testimonios sobre los hechos, entre estos, los siguientes:

(1) Sargento Arnaldo Ramos Vázquez: manifestó que el 4 de febrero de 2024, cuando se disponía a realizar un registro en la vivienda 2G, el confinado Wilfredo Santos Vázquez comenzó a hablar y gritar de forma desafiante. Narró que el recurrente no hizo caso a sus instrucciones y continuó

---

[2] Notificada el 6 de febrero de 2024.
[3] Querella número 215-24-015, presentada el **5 de febrero de 2024.**
[4] Anejo I del *Escrito en Cumplimiento de Orden,* pág. 7.
[5] *Íd.,* pág. 16.

con su conducta inapropiada, poniendo en riesgo la seguridad y alterando el clima institucional. Expresó que cuando el oficial Hernández intentó restringir al recurrente, éste se resistió, para lo cual se utilizó la fuerza necesaria. Por último, declaró que se le brindaron servicios médicos al recurrente, pero se rehusó a recibirlos.[6]

(2) Oficial Jonathan Hernández: Indicó que cuando procedió a realizar el registro en la Unidad 2, el recurrente mostró una actitud desafiante y no paraba de hablar. Señaló que en varias ocasiones se le requirió al recurrente que permaneciera en silencio, pero éste se negó. Ante ello, manifestó que hubo que restringir al señor Santos Vázquez, pero este se resistió, por lo que se tuvo que utilizar la fuerza para restringirlo y ubicarlo en un área más segura. También indicó que se le brindaron los servicios médicos al recurrente, pero éste se negó a recibirlos.[7]

(3) Oficial Román Casiano: Sostuvo que mediante el proceso de un registro rutinario en la sección 2 del módulo G, el recurrente comenzó a hacer alegaciones sobre el registro. Indicó que se le ordenó al recurrente que permaneciera callado, pero se rehusó a seguir las instrucciones impartidas y levantó el tono de voz, interrumpiendo el registro. Indicó que se le ordenó al recurrente levantarse en 3 ocasiones, pero se rehusó.[8]

(4) Declaración del recurrente: *El 2/2/24 hicieron un registro aproximadamente a las 2:30pm, un oficial me da instrucciones de que salga de mi celda y me siente mirando para la pared cerca del teléfono. Así lo [h]ago, intento hablar con el sargento Ramos para que supervise el registro de mi celda y no permita que la analicen los oficiales y saber qué pasa con mis cosas. El sargento Ramos me dice vírate que yo hablo contigo luego. Así lo [h]ago, acto seguido trato de mirar para mi celda y fue cuando intervino el Sr. Román (querellante). Me imparte instrucciones en un tono amenazante, brusco fue cuando yo le pregunté ¿Cuál es tu problema? Pues yo estoy tranquilo vuelve y me manda a callar otra vez, lo miro y le [h]ago la misma pregunta, acto seguido me agarra por los hombros y utiliza la fuerza innecesariamente.[9]*

Además, el recurrente adujo que la querella presentada en su contra: (1) no se presentó dentro del término dispuesto en el Reglamento Núm. 9221; y (2) no era clara ni detallada en cuanto a la descripción del incidente.[10]

Asimismo, surge de los anejos del *Informe* que, el 13 de febrero de 2024, el Superintendente de la Institución, señor Víctor Maldonado

---

[6] *Íd.,* pág. 29.
[7] *Íd.,* pág. 33.
[8] *Íd.,* pág. 15.
[9] *Íd.,* pág. 9.
[10] *Íd.,* págs. 9-12.

Vázquez (Superintendente), emitió un escrito intitulado *Incidente de uso de la fuerza confinado Wilfredo Santos Vázquez y los oficiales correccionales Emalier Roman Casiano Placa 15188, Jonathan Hernández González Placa 15120 y el Sargento Arnaldo Ramos Vázquez Placa 8-14280.* Sobre la presunta imputación sobre exceso de fuerza empleada por los oficiales que intervinieron con el recurrente, el Superintendente concluyó que fue utilizada la fuerza necesaria y pertinente ante la resistencia presentada para restringirlo, y así poder controlar la situación.

En el *Informe* también fueron incluidos los siguientes documentos: Reporte de Cargos, Citación para vista, derecho que asisten al confinado, informes de incidente, fotos, informe de registro, y el informe de uso de la fuerza.

La investigación fue completada el 21 de febrero de 2024, por lo que el 28 de febrero de 2024 se citó al recurrente a comparecer a una vista disciplinaria, a ser celebrada el 4 de abril de 2024. Ese mismo día, también se le entregó al recurrente el *Reporte de Cargos* donde se le imputó la infracción a los Códigos 135, 217 y 225 del Reglamento Núm. 9221.

Una vez celebrada la vista en la fecha pautada,[11] el Oficial Examinador del DCR que la atendió emitió *Resolución,* declarando *incurso* al recurrente por la comisión de las siguientes infracciones, Código 135, *desobedecer una orden directa,* y 217, *estar ausente del Registro o Interferir el Registro,* del Reglamento Núm. 9221. Sin embargo, el foro administrativo no encontró causa por infracción al Código 225, *ruidos excesivos e innecesarios,* del referido Reglamento.[12] En su

---

[11] Notificada el 15 de abril de 2024.

[12] Surge de la *Resolución* que: (1) el recurrente no admitió la violación a la norma; (2) la querella fue leída en voz alta y discutida con el confinado; y (3) el informe de investigación fue leído y discutido con el confinado.

*Resolución* el Oficial Examinador enumeró las siguientes determinaciones de hechos:

1. Que el 5 de febrero de 2024 se presentó una querella contra el querellado por el Código: 135, 217, 225 del Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional (en adelante, Reglamento Disciplinario), Reglamento Núm. 9221 de 8 de octubre de 2020.

2. Que conforme el Informe de Querella, mediante el proceso de registro rutinario en la sección 2, módulo G, estando a cargo el Sargento Rojas, el confinado Wilfredo Santos Vázquez de la celda 106, comienza hacer alegaciones sobre el registro. Se le ordena al mismo que permanezca callado y este se rehúsa a seguir las instrucciones impartidas. Acto seguido comienza a levantar la voz el tono de voz interrumpiendo el registro. Se le ordena que se levante en tres ocasiones el cual se rehúsa.

3. Que se le tomó juramento al querellado.

4. Que el querellado no solicitó la presencia de testigos durante la vista administrativa.

5. Que el querellado durante la vista administrativa declaró en la vista administrativa que el oficial querellante no dice en la querella donde ocurrió el incidente y que el registro que se hizo no fue uno rutinario sino por causa de un confinado que estaba en sobredosis.

6. Que el querellado alegó que la querella no es clara ni específica, pues, el inciso 14 no indica cómo se obtuvo la evidencia, lo mismo el inciso 15 de la querella no se indica la forma en que se aseguró la evidencia.

7. Que el querellado niega que no haya obedecido la orden dada y que siguió las instrucciones impartidas de salir de la celda y se sentó en el área de la pasiva mirando a la pared.

8. Que el oficial Román y el oficial Jonathan estaban velando a los cinco confinados de seguridad entre los cuales estaba el querellado; que pidió hablar con el Sargento Ramos le dijo que se virara que iba hablar después con él.

9. Que, según el querellado, apareció el oficial Román y le dijo que mirara para el frente y que se callara la boca y lo cogió por los hombros y lo levantó y se raspó el codo.

Con relación a la alegación del recurrente de que la querella que le fue entregada *no era clara y específica en los encasillados 14 y 15*, el DCR determinó que los referidos encasillados tratan de la forma en que se

obtuvo la evidencia y se aseguró la misma, asuntos que no eran pertinentes al caso, por tratar la infracción imputada de una conducta desplegada, no sobre la obtención de alguna evidencia física o tangible.

Como dijimos, el recurrente no estuvo conforme con el desenlace del trámite administrativo descrito y por ello acudió ante nosotros, señalando la comisión de los siguientes errores:

> *Erró el DCR toda vez que la vista no se efectuó conforme a la Reglamentación de la agencia.*
>
> *Erró el DCR al violar el debido proceso de ley.*

El 21 de mayo de 2024 emitimos *Resolución* ordenando al DCR que presentara alegato en oposición. En efecto, el DCR, por conducto de la Oficina del Procurador General de Puerto Rico, presentó *Escrito en Cumplimiento de Orden.*

Contando con la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable.

## II. Exposición de Derecho

### A. Revisión Judicial

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.*, dispone sobre el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T–JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 80 (1999). Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran deferencia y consideraciones a las decisiones de los organismos administrativos en vista de la vasta

experiencia y conocimiento especializado[13]. *Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019); *Mun. de San Juan v. Plaza Las Américas*, 169 DPR 310, 323 (2006); *Hernández Álvarez v. Centro Unido*, 168 DPR 592, 615–616 (2006). Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones administrativas. *Metropolitana, S.E. v. A.R.P.E.,* 138 DPR 200, 213 (1995); *Viajes Gallardo v. Clavell*, 131 DPR 275, 289–290 (1992).

Es por las razones expuestas que las decisiones de los foros administrativos están investidas de una presunción de regularidad y corrección. *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 892 (2008); *Vélez v. A.R.P.E.,* 167 DPR 684, 693 (2006); *Rivera Concepción v. A.R.P.E.,* 152 DPR 116, 123 (2000). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales, a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 130 (1998); *A.R.P.E. v. J.A.C.L.,* 124 DPR 858, 864 (1989).

Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors, Motors,* 161 DPR 69, 76 (2004). Conforme a lo cual, habrá que determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. De San Juan v. CRIM,* 178 DPR 164, 175 (2010). Por tanto, la revisión judicial de una determinación administrativa se circunscribe a determinar si: (1) el remedio concedido por la agencia fue apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente

---

[13] Los fundamentos aportados en la muy reciente decisión del Tribunal Supremo Federal en *Loper Bright Enterprises et al.,* v. *Raimondo*, 603 U.S. __ (2024), 144 S.Ct. 2444, cuestionan en lo esencial buena parte de la jurisprudencia que dirige el proceso de revisión por los tribunales de las determinaciones administrativas. Sin embargo, juzgamos que la situación fáctica en el caso ante nuestra atención no nos requiere ahondar sobre el asunto.

administrativo, y (3) las conclusiones de derecho fueron correctas. Sec. 4.5 de la Ley Núm. 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec. 9675; *Torres Rivera v. Policía de PR*, 196 DPR 606, 626-627 (2016).

Por otra parte, nuestro Tribunal Supremo ha identificado circunstancias en que corresponde no observar tal deferencia. En específico, dicho alto foro ha reconocido que la referida deferencia a las determinaciones administrativas cederá cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación de la ley, y (3) ha mediado una actuación irrazonable o ilegal. *Acarón, et al v. D.R.N.A.,* 186 DPR 564, 584 (2012)*; Marina Costa Azul v. Comisión*, 170 DPR 847, 852 (2007).

### B. Reglamento Disciplinario para la Población Correccional, Reglamento Núm. 9221.

El Reglamento Núm.9221 fue aprobado con el propósito de establecer las disposiciones reglamentarias aplicables a los confinados que cometan o intenten cometer un acto prohibido bajo la jurisdicción del DCR. Regla 3 (11) del Reglamento Núm. 9221, *supra*. A través de este se dispuso de un mecanismo para imponer medidas disciplinarias en las instituciones correccionales, mientras se le garantiza un debido proceso de ley a los confinados. Regla 3, Reglamento Núm. 9221, *supra.*

En lo pertinente, entre los actos prohibidos en el referido Reglamento se encuentran:

**(135)    Desobedecer una orden Directa**: Consiste en desobedecer, ignorar o rehusarse a seguir una orden directa válida emitida por parte de un empleado. Además, incluye:
a. Resistirse o negarse a un traslado ordenado por el Departamento de Corrección y rehabilitación;
b. Rehusarse o negarse a despejar o abandonar un área con anterioridad a, o en la cual se esté llevando a cabo un motín o revuelta, insurrección, disturbio o riña, cuando el miembro de la población correccional tiene la capacidad para abandonar el lugar;
c. Si el miembro de la población correccional es sorprendido en posesión ilegal de un teléfono celular o sustancia controlada y éste no obedece, se entenderá una falta

grave. Adicionar a la mera posesión del teléfono celular o sustancia controlada. Regla 15 del Reglamento Núm. 9221.

De igual forma, en mismo cuerpo reglamentario se prohíbe:

**(217)** Estar ausente de Registro o Interferir el Registro-Faltar, esconderse o ausentarse, de un registro o paralizar, impedir, obstaculizar, entorpecer un registro. Regla 16 del Reglamento Núm. 9221.

## C. Querella Disciplinaria

La Regla 6 del Reglamento Núm. 9221 establece que cualquier oficial correccional o funcionario del DCR puede presentar una querella, *cuando sea testigo de un acto o incidente prohibido, o infracción a las norma y reglamentos del DCR por parte de un miembro de la población correccional o tiene un motivo fundado para creer que un miembro de la población correccional cometió alguna infracción a las normas o reglamentos del DCR*. Regla 6 del Reglamento Núm. 9221.

La misma disposición reglamentaria dispone que la querella disciplinaria debe presentarse dentro del término de dos (2) días laborables después del incidente, o dentro del término de dos (2) días laborables desde que el querellante tuvo o debió tener conocimiento del incidente. Esta habrá de ser redactada en letra legible, y contendrá la siguiente información:

1. Una descripción clara y detallada del incidente que dé lugar a la misma, incluyendo la fecha (día/mes/año), hora y lugar del incidente;
2. Nombre del miembro de la población correccional querellado;
3. Nombres de los testigos, si alguno;
4. La prueba obtenida;
5. Manejó la prueba;
6. Nivel y código correspondiente al acto prohibido imputado;
7. Nombre del querellante;
8. Identificación precisa del querellante (puesto, número de placa, posición, lugar de trabajo);
9. Fecha de radicación de querella disciplinaria;

10. Si se obtuvo algún tipo de información confidencial, proceder de acuerdo con lo dispuesto en la Regla 31 y la Regla 32 de este Reglamento.

Regla 6 del Reglamento Núm. 9221.

Por causa de lo anterior, la investigación administrativa comenzará en el término de un (1) día laborable, contado a partir de la notificación de la querella disciplinaria al miembro de la población correccional, y deberá concluir dentro de un término de diez (10) días laborables. Regla 13, Reglamento Núm. 9221, *supra.*

Además, el Reglamento Núm. 9221 establece que los procedimientos inherentes a la investigación son:

1. Entrevistar e interrogar a toda persona relacionada, directa o indirectamente con los hechos imputados, incluyendo al miembro de la población correccional querellado o los testigos solicitados por éste.
2. El querellado debe ser orientado sobre su derecho a guardar silencio y podrá recibir asistencia del Oficial de Querellas.
3. Si el querellado quiere hacer una declaración, podrá completar el formulario correspondiente. Si el querellado no sabe leer o escribir, el Oficial de Querellas deberá tomar la declaración de manera detallada, con cualquier información adicional que pueda observar con respecto al comportamiento del miembro de la población correccional durante la entrevista.
4. El Oficial de Querellas deberá investigar en detalle la versión de hechos presentada por el querellado.
5. **El Oficial de Querellas le facilitará el formulario correspondiente y obtendrá las declaraciones de estos testigos; y las respuestas a las preguntas formuladas por el miembro de la población correccional.**
6. El Oficial de Querellas deberá registrar las declaraciones de los testigos de manera exacta y detallada. No obstante, los testigos tienen la opción de presentar su declaración por escrito o responder directamente a las preguntas realizadas.
7. El Oficial de Querellas verificará el manejo y disposición correcta de la prueba/evidencia y preparará un informe de ello.
8. El Oficial de Querellas podrá comentar sobre asuntos que haya podido percibir personalmente durante la investigación, incluyendo, pero sin limitarse, al comportamiento o el semblante del querellado o de un testigo, aspectos de la distribución de la planta física de la institución correccional y otros similares que puedan ser pertinentes al caso.
9. El Oficial de Querellas redactará un informe completo y detallado que contenga las declaraciones de todos los testigos y la prueba/evidencia recopilada.

10. De ser necesario, el Oficial de Querellas podrá solicitar información a la Unidad de Servicios Sociopenales, Unidad de Récord Criminal, Programa de Comunidad, Programa de Desvío y Comunitarios y Área Médica.

11. Los parámetros para el uso y el manejo de información confidencial se encuentran en la Regla 31 y Regla 32 de este Reglamento.

12. Si el Oficial de Querellas presenció o tiene conocimiento personal del incidente que se encuentra ante su consideración para la correspondiente investigación, deberá inhibirse de ese caso en particular, y otro Oficial de Querellas que esté asignado a la institución tomará la investigación a su cargo. En el caso que no haya otro Oficial de Querella de la misma institución podrá asistirle de otra institución correccional.

Regla 12 del Reglamento Núm. 9221. (Énfasis provisto).

Una vez culminada la investigación, el Oficial de Querellas coordinará con la Oficina de Disciplina de Confinados la calendarización de la agenda y referirá el expediente administrativo del caso al Oficial Examinador para el señalamiento y celebración de la correspondiente vista disciplinaria. Regla 13, Reglamento Núm. 9221. Dicha vista deberá celebrarse dentro de un término no mayor de treinta (30) días laborables siguientes a la conclusión del Informe de Investigación. Regla 26, Reglamento Núm. 9221.

Por último, la Regla 17 del Reglamento Núm. 9221 establece las medidas disciplinarias a las que se puede enfrentar un confinado por violentar alguna de sus reglas. En lo pertinente, el inciso 5 de dicho Reglamento establece que:

La privación de los privilegios podrá incluir la compra de comisaría, recreación activa, visita, correspondencia, actividades especiales y cualquier otro que se le conceda en la institución.

a. Procederá la imposición de privación de privilegios como medida disciplinaria, aun cuando el acto prohibido no esté relacionado con los privilegios retirados, así como en aquellas instancias en que la situación particular del caso permita concluir que dicha medida disciplinaria tendrá un efecto significativo en el mejoramiento del comportamiento del miembro de la población correccional.

b. [...]

c. Se podrá privar del privilegio de la compra en comisaría, a excepción de los artículos de higiene personal y salud. Estos deben estar disponibles a la venta aun cuando se

encuentre sancionado el miembro de la población correccional.

d. [...]

e. Los límites específicos de tiempo para la privación de privilegios de acuerdo al nivel de severidad del acto prohibido serán los siguientes:

    1) Nivel I – Privación de privilegios de treint (30) a sesenta (60) días por violación y el término será determinado por el Oficial Examinador.

    2) Nivel II – Privación de privilegios de uni (1) a treinta (30) días por violación, a ser determinado por el Oficial Examinador.

Regla 17 Reglamento Núm. 9221.

## III. Aplicación del Derecho a los hechos

a.

A través de su escrito el recurrente le imputa al DCR haber incurrido en varios incumplimientos reglamentarios durante el procedimiento disciplinario seguido en su contra. Así, plantea que la *Querella* no fue presentada dentro del término reglamentario aplicable, pues el incidente que se le imputó ocurrió el 4 de febrero de 2024 a las 2:40pm, y la *Querella* se le entregó el 6 de febrero de 2024 a las 3:05pm, incumpliendo la Regla 6 del Reglamento Núm. 9221. Además, sostuvo que la *Querella* era defectuosa por no contener una narración clara y detallada de los hechos del caso. Aduce que, al no habérsele encontrado causa por infracción al Código 225, ello significó que no se revisó el contenido de la *Querella,* y que durante el registro efectuado se utilizó la fuerza antes de darle la oportunidad de dialogar. Añade, que no se le proveyó copia de todos los documentos que forman parte del reporte de cargos, lo que violentó su debido proceso de ley. Por último, sostuvo que el *Oficial de Querellas* no lo asistió en obtener evidencia, y que fue presionado a auto-representarse, aunque no se encontraba apto para ello.

No coincidimos, explicamos a continuación en el mismo orden de los asuntos identificados en el párrafo que antecede.

b.

La Regla 6 del Reglamento Núm. 9221 establece que el procedimiento para imputar y determinar si un confinado incurrió en conducta prohibida comienza con la presentación de una querella disciplinaria, **dentro del término de dos (2) días laborables de ocurrido el incidente.** Surge del expediente ante nuestra consideración que la fecha del incidente en este caso fue el 4 de febrero de 2024, y la querella fue presentada por el Oficial Román Casiano al próximo día, el 5 de febrero de 2024, es decir, de manera oportuna, dentro del término reglamentario establecido para ello.

Respecto al segundo de los asuntos alzados por el querellante, el Reglamento Núm. 9221 establece la información que debe contener toda *Querella*. Analizada la *Querella* presentada en contra del recurrente, surge que cumple cabalmente con la información requerida por la reglamentación aludida. De esta manera, en dicho documento fue incluida: la descripción del incidente; el nombre del querellado; los nombres de los testigos; la evidencia obtenida; los códigos correspondientes a los actos prohibidos; nombre del querellante y su identificación precisa; además de la fecha de radicación de la querella.

Tampoco tiene razón el recurrente al afirmar que el no habérsele encontrado incurso por uno de los Códigos imputados, resultaba equivalente a que la *Querella* fuera defectuosa. Muy por el contrario, tal dictamen favorable al recurrente puso de manifiesto el proceso deliberativo que correspondía ser asumido por el Oficial Examinador que presidió la vista celebrada, quien, luego de aquilatar la prueba que tuvo ante sí, juzgó que mediante esta no cabía sustentar la infracción al Código 225 del Reglamento Núm. 9221. Ello en modo alguno sugiere o puede interpretarse como que faltara evidencia para sostener la infracción por los Códigos restantes, 135 y 217 por los cuales fue

encontrado incurso, sino que el dictamen respondió a una prueba que sirvió solo para establecer los elementos de la conducta prohibida en estos dos Códigos.

En cuanto a la supuesta deficiencia en la notificación de los cargos, conforme el expediente administrativo, el *Reporte de Cargos* se le entregó al recurrente el 28 de febrero de 2024.[14] En el referido reporte fueron incluidos los hechos alegados como justificantes de la medida disciplinaria a ser impuesta y la referencia a los Códigos contenidos en el Reglamento Núm. 9221 que a ese momento presuntamente fueron infringidos, según este documento fue firmado por el propio recurrente. Asimismo, consta en la *Resolución* recurrida que la *Querella* y el *Informe* fueron leídos y discutidos con el recurrente, sirviendo este ejercicio para atribuirle conocimiento de los cargos que enfrentó y la evidencia en su contra, sin que contemos con prueba alguna que nos posicione para determinar lo contrario.

De igual forma, del expediente ante nuestra consideración surge que, contrario a lo alzado por el recurrente, el Oficial de Querellas realizó las preguntas que el primero solicitó se hicieran a otros confinados,[15] y la Dra. Julimar Sáez Colón, psicóloga clínica, emitió una certificación del tratamiento que se le realizó[16]. No apreciamos la presunta falta de asistencia del Oficial de Querellas en la investigación conducida, careciendo de elementos para acoger esta alegación del recurrente.

Por último, la Regla 25 del Reglamento Núm. 9221 dispone que será deber de todo querellante y querellado que reciba una notificación de vista administrativa comparecer a la misma, excepto que el querellado: *(1) renuncie expresamente a ello; (3) se encuentre fugitivo, o; (3) sea excluido por razones de seguridad.* Ninguna de estas

---

[14] Anejo I del *Escrito en Cumplimiento de Orden,* pág. 14.
[15] Anejo I del *Escrito en Cumplimiento de Orden,* págs. 14-23.
[16] *Íd.,* pág. 24.

circunstancias ocurrió en el caso del recurrente. Es decir, según lo revela el tracto procesal seguido en el proceso administrativo, el recurrente no renunció a la vista por escrito, ni tampoco demostró en su recurso que se le hubiese obligado a asistir a esta, menos aún que estuviera fugitivo. Tal cual apuntamos, de conformidad con lo que establece el Reglamento Núm. 9221, el recurrente tenía el deber de comparecer a la vista que se realizaría para dilucidar la querella disciplinaria presentada en su contra, en ausencia de las circunstancias enumeradas.

c.

Según ha quedado visto, el recurrente no nos ha persuadido de que el DCR hubiese incumplido con el procedimiento establecido en el Reglamento 9221 al tramitar la querella presentada en su contra, que tuvo con consecuencia la imposición de una medida disciplinaria, ni de que se le violentara el debido proceso de ley en el curso seguido.

En definitiva, y considerados los asuntos que preceden, nos resulta claro que el recurrente falló en demostrar que la *Resolución* recurrida fuera irrazonable o arbitraria, ni que la evidencia sustancial que obra en el expediente fuera insuficiente para sancionarlo por los actos prohibidos. Además, el recurrente cuestionó la determinación de la agencia administrativa, negando los hechos alegados en su contra, sin señalar prueba que obrara en el expediente administrativo que sirviera para menoscabar la presunción de corrección que reviste la determinación recurrida.

## IV. Parte dispositiva

Por los fundamentos que anteceden, se *Confirma* el dictamen recurrido.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones